| | |
|---|---|
| 1 | Christopher H. Hart (CSBN 184117)<br>  chart@schnader.com |
| 2 | David Smith (*Admitted Pro Hac Vice*)<br>  dsmith@schnader.com |
| 3 | Stephen A. Fogdall (*Admitted Pro Hac Vice*)<br>  sfogdall@schnader.com |
| 4 | Theresa E. Loscalzo (*Admitted Pro Hac Vice*)<br>  tloscalzo@schnader.com |
| 5 | SCHNADER HARRISON SEGAL & LEWIS LLP<br>One Montgomery Street, Suite 2200 |
| 6 | San Francisco, California 94104-5501<br>Telephone: 415-364-6700 |
| 7 | Facsimile: 415-364-6785 |
| 8 | Attorneys for Defendant RADIAN GUARANTY INC. |
| 9 | *Additional Counsel Listed on Next Page* |

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE SAMP, ROBERTA SAMP, DANIEL KOMARCHUK, SUSAN KOMARCHUK, and ANNETTA WHITAKER, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., CHASE BANK USA, N.A., JPMORGAN CHASE, & CO., CROSS COUNTRY INSURANCE, COMPANY, UNITED GUARANTY, RESIDENTIAL INSURANCE CO., PMI MORTGAGE INSURANCE CO., MORTGAGE GUARANTY INSURANCE CORP., GENWORTH MORTGAGE INSURANCE CORP., REPUBLIC MORTGAGE INSURANCE CO., RADIAN GUARANTY INC., and TRIAD GUARANTY INSURANCE CORP.,<br><br>         Defendants. | Case No. EDCV11-01950 VAP SPX<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANTS MORTGAGE GUARANTY INSURANCE CORP., PMI MORTGAGE INSURANCE CO., RADIAN GUARANTY INC., AND TRIAD GUARANTY INSURANCE CORP. TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**<br><br>Date:  April 16, 2012<br>Time:  2:00 p.m.<br>Place:  Courtroom 2<br>        3470 Twelfth Street, 2nd Floor<br>        Riverside, CA<br>Judge:  The Honorable Virginia A. Phillips |

Douglas Andrew Winthrop (CSBN 183532)
   douglas.winthrop@aporter.com
Sara Jennifer Eisenberg (CSBN 269303)
   sara.eisenberg@aporter.com
ARNOLD & PORTER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111-4024
Telephone: 415-434-1600
Facsimile: 415-677-6262

Eric Shapland (CSBN 193853)
   eric.shapland@aporter.com
Amie L. Medley (CSBN 266586)
   amie.medley@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213-243-4000
Facsimile: 213-243-4199

Attorneys for Defendants
PMI MORTGAGE INSURANCE CO.

Thomas Justin Cunningham (CSBN 263729)
   tcunningham@lockelord.com
Daniel A Solitro (CSBN 243908)
   dsolitro@lockelord.com
LOCKE LORD LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071
Telephone: 213-485-1500
Facsimile: 213-485-1200

Attorneys for Defendant
TRIAD GUARANTY INSURANCE CORP

Michael Steven Lawrence (CSBN 255897)
   mlawrence@foley.com
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3500
Los Angeles, CA  90071-2411
Telephone: 213-972-4500
Facsimile: 213-486-0065

Attorneys for Defendant
MORTGAGE GUARANTY INSURANCE CORPORATION

Moving Defendants submit this reply memorandum in support of their motion to dismiss plaintiffs' amended complaint. Moving Defendants demonstrated in their opening memorandum of points and authorities that plaintiffs lack standing to sue the Moving Defendants, none of whom insured plaintiffs' loans. Plaintiffs concede in their response that the juridical link doctrine is of no help to them, but argue incorrectly that they have standing because they have tried to plead a hub and spoke conspiracy. Plaintiffs' argument fails to establish standing, and the Amended Complaint should be dismissed against the Moving Defendants, for the following reasons:

1. Plaintiffs' failed effort to plead a hub and spoke conspiracy cannot cure their lack of standing;

2. Plaintiffs' economic theory of injury is meritless; and

3. Plaintiffs' statutory theory of injury is barred by RESPA's plain terms.

We shall discuss each of these reasons in order.

## I. Plaintiffs' Failed Effort to Plead a "Hub and Spoke" Conspiracy Cannot Cure Their Lack of Standing.

Contrary to plaintiffs' arguments, their allegation that "each defendant, including each of the Moving Defendants, acted together, in coordinated 'hub and spoke' fashion" cannot cure their lack of standing. Pls' Mem. at 2, Dkt. No. 103.

*First,* contrary to plaintiffs' self-serving descriptions of the Amended Complaint as "clearly" and "repeatedly" alleging that the Moving Defendants "jointly schemed" with others to violate RESPA, the factual averments in the Amended Complaint are that the lender defendants (JPMorgan Chase Bank, N.A., Chase Bank USA, N.A. and JPMorgan Chase, & Co.) strong-armed each of the mortgage insurer defendants into entering into "nearly identical" agreements with their captive reinsurer Cross County Insurance Company. Plaintiffs then argue that each putative class member "suffered the same harm." Pls' Mem. at 6, 8. These allegations of parallel conduct fail as matter of law to establish the supposed "coordination" on which plaintiffs seek to rely. Plaintiffs' Amended Complaint rests solely on "descriptions of parallel conduct and not on any independent allegation of actual agreement" among defendants. *Bell Atlantic Corp. v.*

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

*Twombly,* 550 U.S. 544, 564 (2006). While plaintiffs repeatedly *say* that this purportedly "identical" conduct by the Moving Defendants was "coordinated," "these are merely legal conclusions resting on the prior allegations [of parallel conduct]." *Id.* Plaintiffs' Amended Complaint thus contains nothing beyond "naked assertions of conspiracy" that could not "plausibly suggest[]" that the Moving Defendants "*jointly schemed*" to violate RESPA. *Twombly,* 550 U.S. at 557; Pls' Mem. at 19.[1]

**Second,** even if plaintiffs *had* adequately alleged that all of the defendants "jointly schemed" to violate RESPA in "coordinated 'hub and spoke' fashion," that would not give them standing to bring RESPA claims against the Moving Defendants, and plaintiffs do not cite a single case suggesting that they could.

The first case on which plaintiffs rely, *Moore v. GMAC LLC,* is nothing like this case. In that case, the court excused plaintiff's "failure to distinguish the separate GMAC corporate entities in her Complaint" because each of these GMAC entities "participated in the alleged conspiracy to disguise kickbacks." Ciolko Decl. Ex. E at 2-3. That analysis does not remotely support plaintiffs' assertion that they could have standing to sue mortgage insurers that bear no corporate affiliation to JPMorgan, did not insure plaintiffs' loans, did not pay a "thing of value" to JPMorgan to refer plaintiffs' settlement service business to them, and did not split with

---

[1] Plaintiffs wrongly say that it is somehow "sleight of hand" to cite *Twombly* in a motion attacking subject matter jurisdiction (here, standing). Pls' Mem. at 22 n.21. Contrary to plaintiffs' assertions, "if any aspect of a complaint must meet the plausibility requirements set by [*Twombly*], it would be the requisites for subject matter jurisdiction." *Muwwakil-Davis v. Wilmington Finance, Inc.,* 2011 U.S. Dist. LEXIS 1696, *9 (E.D. Va. 2011); *see also Tilikum v. Sea World Parks & Entertainment, Inc.,* 2012 U.S. Dist. LEXIS 15258, *5-*6 (S.D. Cal. Feb. 8, 2012) (explaining that whether a motion to dismiss is "one arising under . . . Rule 12(b)(1) (dismissal for lack of subject matter jurisdiction) or Rule 12(b)(6) (dismissal for failure to state a claim), the 'complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Twombly,* 550 U.S. at 570)); *Collazo-Rosado v. University of Puerto Rico,* 775 F. Supp. 2d 376, 380-81 (D.P.R. 2011) ("[T]he Court finds that Plaintiff has the burden of establishing that subject matter jurisdiction exists within the parameters of the 'plausibility' standard established by *Twombly* and *Iqbal* when confronted with Defendant's 12(b)(1) Motion to Dismiss."); *United States v. Urban,* 2009 U.S. Dist. LEXIS 67347, *6 (N.D. Ill. 2009) ("Similar to a Rule 12(b)(6) motion to dismiss, in deciding a Rule 12(b)(1) motion, the 'complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

JPMorgan any "charge" they received "for the rendering of a real estate settlement service in connection with" plaintiffs' loans.  12 U.S.C. § 2607(a) & (b).

Likewise, *In re Processed Egg Products Antitrust Litigation*, 2012 WL 935669 (E.D. Pa. Mar. 20, 2012), is a lawsuit based on a horizontal price-fixing conspiracy among egg producers in which they allegedly agreed together to raise the price of their product. *Id.* at *1.  It is, of course, entirely unsurprising that, *in the antitrust context*, a plaintiff would have standing to sue all of the members of a horizontal price-fixing conspiracy that raised the price of the product. Plaintiffs do not allege any such horizontal conspiracy here.  Moreover, RESPA is not an antitrust statute and by its plain terms does not permit a plaintiff to sue a settlement service provider simply because that settlement service provider allegedly paid a kickback in order to have some *other* borrower referred to it.  Nothing in RESPA permits a plaintiff to sue for some other borrower's alleged RESPA claim simply because that other alleged violation supposedly was "coordinated" with the violation that the plaintiff alleges.

Similarly, *Facciola v. Greenberg Traurig LLP,* 2012 U.S. Dist. LEXIS 37133 (D. Ariz. Mar. 19, 2012), a securities fraud case, fails to support plaintiffs' argument.  As that case notes, "[s]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents." *Id.* at *7 (quoting *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,* 500 U.S. 72, 77 (1991)).  Again, while it may be the case that "[p]laintiffs with a valid securities claim may represent the interests of purchasers of other types of securities in a class action where the alleged harm stems from the same allegedly improper conduct," *id.* (quoting *In re Juniper Networks, Inc. Sec. Litig.,* 264 F.R.D. 584, 594 (N.D. Cal. 2009)), nothing in RESPA begins to suggest that a plaintiff can bring a claim based on a "settlement service involved in [an alleged] violation" involving *someone else's loan*.  12 U.S.C. § 2607(d)(2).

Lastly, plaintiffs get no help from *Kay v. Wells Fargo & Co.,* 247 F.R.D. 572 (N.D. Cal. 2007).  In *Kay*, the only defendants were the lender and the lender's reinsurance subsidiary. There was no dispute that the plaintiff had standing to sue them.  The question here, which was not at issue in *Kay*, is whether plaintiffs have standing to sue mortgage insurers who did not insure their loans and who are not alleged to have paid a kickback or split a charge in order to

3

receive *plaintiffs'* settlement service business. The answer to that question is no, for all the reasons shown here and in the Moving Defendants' opening brief in support of Motion to Dismiss.

## II. Plaintiffs' Economic Theory of Injury is Meritless.

Plaintiffs' economic theory of injury, under which they allege "the premiums they paid were inflated to cover the cost of the kickback/referral fees," Pls' Mem. at 13, fails for two reasons.

***First,*** even assuming that plaintiffs had properly alleged that "the premiums they paid were inflated" in this way, nothing in plaintiffs' Amended Complaint shows that this purported "inflated" price was in any way caused by the Moving Defendants. To the contrary, if plaintiffs' mortgage insurance premiums truly were "inflated to cover the cost of" "kickback/referral fees," this could only be "kickback/referral fees" paid by the mortgage insurers of *plaintiffs'* loans. There is nothing in the Amended Complaint plausibly suggesting that plaintiffs' mortgage insurance premiums could somehow be inflated to cover "kickback/referral fees" paid by *other* mortgage insurers that have nothing to do with their loans or their mortgage insurance. Indeed, such an allegation would make no sense "when viewed in light of common economic experience," *Twombly,* 550 U.S. at 565, because there is no economic reason (or none that plaintiffs allege) why the premiums charged by one mortgage insurer should be "inflated" to cover "kickback" costs supposedly borne by a completely different mortgage insurer. Thus, even if plaintiffs could allege that their mortgage insurance premiums were "inflated," nothing in plaintiffs' Amended Complaint plausibly shows that this supposed injury was caused by the Moving Defendants.

***Second,*** plaintiffs have not in fact properly alleged that their mortgage insurance premiums *were* "inflated." Not only is this assertion utterly lacking in support in the Amended Complaint, it is contradicted by the applicable rate-filing regulations. For example, in California, where the Samps reside, all insurance premiums, including mortgage insurance premiums, must be actuarially justified according to a formula that takes into account projected losses and other factors, but gives "*no consideration for the cost or benefits of reinsurance.*" 10

CCR 2644.25(a) (emphasis added); *see also* 10 CCR 2644.2 (specifying formula for calculating "maximum permitted earned premium").  Nowhere in plaintiffs' Amended Complaint do they allege that their mortgage insurance premiums were not properly calculated in accordance with these regulations.  Thus, it simply is not the case that their mortgage insurance premiums "included the kickbacks to lenders," Am. Compl. ¶ 95, *or were in any other way excessive*.  Moreover, such allegations could not survive the filed rate doctrine.  *See, e.g., McKay v. Superior Court of Los Angeles,* 188 Cal. App. 4th 1427, 1448 (2nd Dist. 2010) ("The filed rate doctrine provides that rates duly adopted by a regulatory agency are not subject to collateral attack in court."); *McCray v. Fidelity Nat'l Title Ins. Co.,* 636 F. Supp. 2d 322, 332-33 (D. Del. 2009) (filed rate doctrine barred plaintiffs' claim that defendants' title insurance rates "included the cost of kickbacks" because "plaintiffs have not alleged that the defendants have failed to comply with the regulatory [rate filing] procedures in any way").

Thus, plaintiffs' economic theory of injury fails.

### III.    Plaintiffs' Statutory Theory of Injury is Barred by RESPA's Plain Terms.

Plaintiffs' alternative theory of injury is that "Congress bestowed upon [them] and the Class a right to a real estate settlement free from unlawful kickbacks and unearned fees."  Am. Compl. ¶ 165.  Because of this alleged "right," plaintiffs say that they can sue all defendants under "the plain, unambiguous language" of RESPA without demonstrating an "overcharge" in their mortgage insurance premiums.  Pls' Mem. at 17 n. 8 (quoting *Alston v. Countrywide Fin. Corp.,* 585 F.3d 753, 760-761 (3d Cir. 2009)).  This statutory theory of injury cannot work with respect to the Moving Defendants because the Moving Defendants could not possibly have violated any alleged "right" granted to plaintiffs by RESPA.[2]

---

[2]    We assume, *arguendo*, that plaintiffs' "statutory" theory of injury suffices to give them standing to sue their lender and their mortgage insurers under RESPA.  It is this issue that is currently before the Supreme Court in *Edwards*.  It has no impact on why plaintiffs have no standing to sue the Moving Defendants.  However, even if the Supreme Court were to hold in *Edwards* that Congress bestowed on plaintiffs the alleged "right" they assert under RESPA, and that a mere violation of that "right," even without an economic injury, is sufficient to confer standing on a plaintiff to sue the violators, it would not follow that plaintiffs have standing to sue the Moving Defendants, because the Moving Defendants never violated plaintiffs' rights under RESPA.

Section 2607 of RESPA prohibits two types of activity, which can be described in the simplest terms as (a) kickbacks and (b) split charges.

The prohibition against kickbacks states:

> No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).

The prohibition against split charges states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

Clearly, plaintiffs could have no claim against the Moving Defendants under Section 2607(a). None of the Moving Defendants provided *any* settlement service "involving" plaintiffs' loans. Moreover, the Moving Defendants could not have "give[n]," and JPMorgan could not have "accept[ed]," any "fee, kickback or thing of value" pursuant to an "agreement" that JPMorgan refer *plaintiffs'* settlement service business to one of the Moving Defendants.

Similarly, plaintiffs could have no claim against the Moving Defendants under Section 2607(b). None of the Moving Defendants received any "charge" "in connection with a transaction" "involving" plaintiffs' loans. Hence, the Moving Defendants could not have "give[n]," and JPMorgan could not have "accept[ed]," and "portion, split, or percentage" of such a charge.

These conclusions are reinforced by Section 2607's remedial provision, the relevant portion of which states:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for *the settlement service involved in the violation* in an amount equal to three times the amount of any charge paid for such settlement service.

12 U.S.C. § 2607(d)(2) (emphasis added).

Schnader Harrison Segal & Lewis LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

On its face, this provision cannot give plaintiffs any right of recovery against the Moving Defendants. The Moving Defendants never "charged" plaintiffs for a "settlement service involved in [any alleged] violation." Instead, the Moving Defendants are only alleged to have "charged" *other* borrowers (in actuality, their lender) for "settlement services involved in [*other* alleged] violations." To the extent the Moving Defendants could have violated RESPA, the "settlement service involved in the violation" would *not* be plaintiffs' settlement service but that of those other borrowers. For plaintiffs to have a claim under RESPA against the Moving Defendants, then, they would have to read Section 2607(d)(2) as entitling them to recover "three times the amount" that *other* borrowers were charged for the settlement service provided to *those* borrowers, which makes no sense at all.

Of course, that is not how plaintiffs are attempting to read Section 2607(d)(2). To the contrary, they wish to recover "three times the amount" that *they* themselves paid for the mortgage insurance on *their* loans, and thus the "settlement service involved in the violation" that they allege is their *own* mortgage insurance. But, according to plaintiffs' own allegations, the Moving Defendants did not commit any violation of RESPA "involving" plaintiffs' mortgage insurance coverage. Thus, Section 2607(d)(2) does not provide any basis on which plaintiffs' could recover from the Moving Defendants "three times the amount" that plaintiffs' paid for their own mortgage insurance.

Nothing in plaintiffs' opposition brief challenges any of this. And, as the Moving Defendants demonstrated in their opening brief (and plaintiffs failed to refute), plaintiffs can not obtain standing against the Moving Defendants by virtue of class action provisions of Rule 23. Hence, there can be no question that plaintiffs' "statutory" theory of injury cannot give them standing to bring any claim against the Moving Defendants.

## CONCLUSION

For these reasons, the Moving Defendants respectfully urge the Court to dismiss them from this action on the basis that plaintiffs lack standing to assert any claims against them.

Dated: April 2, 2012

SCHNADER HARRISON SEGAL & LEWIS LLP

*/s/David Smith*
Christopher H. Hart
David Smith (*Admitted Pro Hac Vice*)
Theresa E. Loscalzo (*Admitted Pro Hac Vice*)
Stephen A. Fogdall (*Admitted Pro Hac Vice*)
Attorneys for Defendant
RADIAN GUARANTY INC.
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Phone: 215-751-2000
Fax: 215-751-2205
Email: dsmith@schnader.com

Dated: April 2, 2012

ARNOLD & PORTER LLP

*/s/Douglas A. Winthrop*
Douglas A. Winthrop
Sara J. Eisenberg
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Phone: 415-434-1600
Fax: 415-677-6262
douglas.winthrop@aporter.com
sara.eisenberg@aporter.com

Eric Shapland
Amie L. Medley
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Phone: 213-243-4000
Facsimile: 213-243-4199
eric.shapland@aporter.com
amie.medley@aporter.com

Attorneys for Defendant
PMI MORTGAGE INSURANCE CO.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

| | | |
|---|---|---|
| 1 | Dated: April 2, 2012 | FOLEY & LARDNER LLP |
| 2 | | |
| 3 | | /s/Michael S. Lawrence<br>Michael S. Lawrence |
| 4 | | Attorneys for Defendant<br>MORTGAGE GUARANTY INSURANCE |
| 5 | | CORPORATION<br>Foley & Lardner LLP |
| 6 | | 555 South Flower Street Suite 3500<br>Los Angeles, CA 90071-2411 |
| 7 | | Phone: 213-972-4500<br>Fax: 213-486-0065 |
| 8 | | mlawrence@foley.com |
| 9 | | |
| 10 | Dated: April 2, 2012 | LOCKE LORD LLP |
| 11 | | |
| 12 | | /s/Daniel A. Solitro<br>Thomas J. Cunningham |
| 13 | | Daniel A. Solitro |
| 14 | | Attorneys for Defendant<br>TRIAD GUARANTY INSURANCE CORP. |
| 15 | | 300 South Grand Avenue, Suite 2600<br>Los Angeles, CA, 90071 |
| 16 | | Phone: 213-485-1500<br>Fax: 213-485-1200 |
| 17 | | tcunningham@lockelord.com<br>dsolitro@lockelord.com |

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785