# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 11-1950VAP(SPx)                    Date:  May 7, 2012

Title:     WAYNE SAMP, et al. *-v-* JPMORGAN CHASE BANK, N.A., et al.
================================================================
PRESENT:        HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

| Marva Dillard | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS:    MINUTE ORDER: (1) DENYING PLAINTIFFS' MOTION TO
                STAY; (2) DENYING CERTAIN DEFENDANTS' MOTION TO
                DISMISS; AND (3) GRANTING CERTAIN DEFENDANTS'
                MOTION TO STAY; (IN CHAMBERS)

       Before the Court are a Motion to Stay filed by Plaintiffs Wayne Samp, Roberta
Samp, Daniel Komarchuk, Susan Komarchuk, and Annetta Whitaker, on behalf of
themselves and all others similarly situated ("Plaintiffs"), and a Motion to Dismiss
and Motion to Stay ("Moving Defs.' Mot. to Stay") filed by Defendants Mortgage
Guaranty Insurance Corp., PMI Mortgage Insurance Co., Radian Guaranty., Inc.,
and Triad Guaranty Insurance Corp. ("Moving Defendants").  The Court finds the
matters appropriate for resolution without a hearing.  <u>See</u> Fed. R. Civ. P. 78; L.R. 7-
15.  After considering the papers in support of, and opposition to, the Motions, the

MINUTES FORM 11                              Initials of Deputy Clerk ___md___
CIVIL -- GEN                    Page 1

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

Court DENIES Plaintiffs' Motion to Stay, DENIES Moving Defendants' Motion to Dismiss, but GRANTS Moving Defendants' Motion to Stay.

# I. BACKGROUND

## A.    Factual Allegations
### 1.    Plaintiffs' Mortgage Loans

On June 6, 2008, Plaintiffs Wayne and Roberta Samp ("the Samps") obtained a mortgage loan from Defendant JPMorgan Chase Bank, N.A. ("JPMorgan Chase"). (FAC ¶ 19.)  In connection with the loan, JPMorgan Chase required the Samps to pay for private mortgage insurance.  (Id.)  JPMorgan Chase selected Defendant Genworth Mortgage Insurance Corp. as the private mortgage insurance provider. (Id.)

On January 27, 2005, Plaintiffs Daniel and Susan Komarchuk ("the Komarchuks") obtained a mortgage loan from Defendant Chase Manhattan Mortgage Corp. ("Chase").  (FAC ¶ 20.)  In connection with the loan, Chase required the Komarchuks to pay for private mortgage insurance.  (Id.)  Chase selected Defendant Republic Mortgage Insurance Co. as the private mortgage insurance provider.  (Id.)

On April 28, 2005, Plaintiff Annetta Whitaker obtained a mortgage loan from JPMorgan Chase.  (FAC ¶ 21.)  In connection with the loan, JPMorgan Chase required Whitaker to pay for private mortgage insurance.  (Id.)  JPMorgan Chase selected Defendant United Guaranty Residential Insurance Co. as the private mortgage insurance provider.  (Id.)

### 2.    The "Scheme"

Plaintiffs allege Defendants JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., and JPMorgan Chase & Co. (collectively, "JPMorgan") along with an affiliated entity, Cross Country Insurance Co. ("the Captive Reinsurer"), violated the Real Estate Settlement Procedures Act ("RESPA") by soliciting kickbacks from private mortgage insurers including Moving Defendants and Defendants Genworth Mortgage Insurance Corp., Republic Mortgage Insurance Co., and United Guaranty Residential Insurance, (collectively, "Private Mortgage Insurers"), in exchange for directing the class of mortgagors to purchase mortgage insurance from those

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

insurers.  Plaintiffs allege JPMorgan required them to purchase private mortgage insurance from the Private Mortgage Insurers, who in turn were required by contract to surrender a portion of the Plaintiffs' premiums to purchase reinsurance from the Captive Reinsurer.

Plaintiffs aver that by requiring Moving Defendants to purchase reinsurance from the Captive Reinsurer, JPMorgan was effectively forcing the insurers to pay a kickback for customer referrals.  Plaintiffs contend the reinsurance was actually a kickback because the contracts between the Private Mortgage Insurers and the Captive Reinsurer were structured such that the Captive Reinsurer would not suffer any actual losses if the insured mortgagors defaulted.  In addition to violating RESPA, Plaintiffs allege this scheme caused them to pay higher premiums for mortgage insurance, as Moving Defendants were kicking back a portion of the premiums to the Captive Reinsurer.

## B.    Procedural History

Plaintiffs filed their Complaint on December 9, 2011.  (See Doc. No. 1.)  On March 2, 2012, Plaintiffs filed their First Amended Complaint ("FAC"), (see Doc. Nos. 79, 111-118), asserting two claims for relief: (1) violation of RESPA, 12 U.S.C. § 2607; and (2) unjust enrichment.  (See FAC ¶¶ 156-174.)

On March 16, 2012, after certain Defendants stipulated to stay this action against them pending the United States Supreme Court's decision in First American Financial Corp. v. Edwards, 610 F.3d 514 (9th Cir.) cert. granted 131 S. Ct. 3022 (2011), Plaintiffs filed their Motion to Stay the case as to all Defendants.  (Doc. No. 90.)  Moving Defendants filed their Opposition[1] on March 26, 2012, and Plaintiffs filed their Reply on April 2, 2012.  (Doc. Nos. 102, 108.)

---

[1]  The font size for each of the documents Moving Defendants filed, including the Motion to Dismiss, Reply in support of the Motion to Dismiss, and Opposition to Plaintiffs' Motion to Stay, is too small, violating Local Rule 11-3.1.1.  The Court exercises its discretion to consider the noncompliant documents, but cautions counsel that future documents that do not with all of the Central District's Local Rules may not be considered.

Also on March 16, 2012, Moving Defendants filed their Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1).  (Doc. No. 91.)  Plaintiffs filed their Opposition on March 26, 2012, and Moving Defendants filed their Reply on April 2, 2012.  (Doc. Nos. 103, 109.)

## II.  LEGAL STANDARD

### A.   Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Dependable Highway Express, Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007).  Considering efficiency and fairness to the parties, the Court may "enter a stay of an action before it, pending resolution of independent proceedings which will bear on the case."  Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979).

When considering a motion to stay, the court weighs a series of competing interests (hereafter, "Landis factors"): (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254-55); see also Lockyer v. Mirant Corp., 398 F.3d 1098, 1110-13 (9th Cir. 2005) (affirming the continuing validity of CMAX).

### B.   Motion to Dismiss

Moving Defendants seek to dismiss Plaintiffs' FAC under Federal Rule of Civil Procedure 12(b)(1), which authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction.  "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."  Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).  In the context of a 12(b)(1) motion, the plaintiff has the burden of establishing Article III standing to assert the claims.  Id. at 1122.  If the Rule 12(b)(1) motion is premised on a "want of standing, . . . the trial . . . court[] must accept as true all material allegations of the complaint and must construe the complaint in

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975); see also
Chandler, 598 F.3d at 1121 (holding that courts ruling on Rule 12(b)(1) motions
based on a lack of standing "must accept as true all material allegations in the
complaint," and construe the complaint in favor of the nonmovant); Bernhardyt v.
Cnty. of L.A., 379 F.3d 862, 869 (9th Cir. 2002).

A suit brought by a plaintiff without Article III standing is not a "case or
controversy," and an Article III federal court therefore lacks subject matter
jurisdiction over the suit. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir.
2004) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)). In that
event, the suit should be dismissed under Rule 12(b)(1). Id. (citing Steel Co., 523
U.S. at 109–10; Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th Cir.
2003); Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 664 (9th Cir. 2002)).

### III. DISCUSSION

#### A.   Motion to Stay

Plaintiffs, as the parties moving for the stay, "bear[] the burden of establishing
its need." Clinton v. Jones, 520 U.S. 681, 708 (citing Landis, 299 U.S. at 255).  As
discussed below, Plaintiffs have not satisfied their burden.

#### 1.   First Landis Factor

The first Landis factor the Court must consider is the possible damage that
may result from granting a stay. CMAX, 300 F.2d at 268.  Plaintiffs argue that there
is no damage to Moving Defendants from a stay.  Moving Defendants respond that
they "will have to maintain burdensome and costly litigation holds, make disclosures,
and deal with publicity that otherwise would not be necessary."  (Opp'n to Mot. to
Stay at 4.)  Plaintiffs rejoin that the litigation hold requirements are required of all
Defendants in this action, and "clearly are not of such monumental concern that they
prevented [other Defendants] from voluntarily agreeing to a stay of this action . . . ."
(Mot. at 7.)

The Court finds Plaintiffs have not satisfied their burden as to the first Landis
factor.  Here, as discussed below, Moving Defendants have also filed their Motion to
Dismiss asserting Plaintiffs do not have standing to bring their claims against Moving
Defendants because Moving Defendants did not provide mortgage insurance to

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

Plaintiffs, and Plaintiffs have not alleged a scheme sufficiently.  The Motion to Dismiss raises issues that are different from those raised in Edwards, in which the Supreme Court will determine whether a plaintiff has Article III standing to bring an action under RESPA's anti-kickback provisions where the plaintiff does not allege she was overcharged.

Accordingly, while the other Defendants may be willing to incur costs of a stay pending the Supreme Court's Edwards decision, the calculus regarding the costs of a stay is different for Moving Defendants; a decision in Edwards may not affect the viability of Plaintiffs' claims against them because Plaintiffs may lack standing to assert such claims against them regardless of the Edwards decision.  In other words, the costs of a stay are more burdensome to Moving Defendants given that Plaintiffs' claims against them may not require resolving the issues presented in Edwards.[2]

The Court therefore finds that the costs of litigation holds and disclosures cause the first Landis factor to weigh against a stay.

### 2.    Second & Third Landis Factors

The second Landis factor the Court must consider is the "hardship or inequity [that] a party may suffer in being required to go forward."  CMAX, 300 F.2d at 268. Plaintiffs do not address this factor specifically, but appear to contend that without a stay they would suffer a hardship because they would have to expend significant "time and resources."  (Mot. at 8.)  Plaintiffs do not, however, specify what "time or resources" would be expended if the Court did not grant a stay.  Moreover, insofar as the "time and resources" refer to the expense of opposing Moving Defendants'

───────────────

[2] As the standing issue in Edwards is different from the standing issue here, the cases Plaintiffs rely upon in support (see Mot. at 2, 8-10) are inapposite as all but one of the cases determined the standing issue in Edwards was dispositive, and the court in White v. The PNC Financial Services Group, Inc., No. 11-cv-7928 (E.D. Pa., filed Dec. 30, 2011), did not discuss the distinction between the standing issue in Edwards and the one presented here.  White is, therefore, of little persuasive value as to the propriety of granting a stay.

MINUTES FORM 11                                    Initials of Deputy Clerk ___md___
CIVIL -- GEN                        Page 6

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

Motion to Dismiss, that time has already been expended as the briefing on that motion is complete.

In their Reply, Plaintiffs argue that absent a stay they "would be burdened with seriatim motions to dismiss and the extensive briefing that will be required in conjunction with each such motion." (Reply at 8.) This argument, though styled as one pertaining to Plaintiffs' burden, pertains more to the third Landis factor, whether or not a stay pending the Edwards decision would simplify or complicate "issues, proof, and questions of law." CMAX, 300 F.2d at 268. Regardless of how the argument is styled, it has several flaws.

First, the issue raised in Edwards is different from the issues raised in Moving Defendants' Motion to Dismiss, and, hence, Edwards will neither complicate nor simplify the relevant issues of law in the present Motion to Dismiss. Second, as stated above, the briefing is already complete on Moving Defendants' motion, and, thus, there is no need for additional "extensive briefing" on that motion. Third, as to Plaintiffs' burden in opposing future motions to dismiss, depending on the outcome of Edwards, it is not certain that Moving Defendants would file an additional motion to dismiss. Finally, whether or not Moving Defendants file a motion to dismiss after Edwards is decided, the Court must resolve the standing issue raised here regardless of the issues raised in future motions. See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) (noting that as the "existence of Article III standing is not subject to waiver," "[f]ederal courts are required sua sponte to examine jurisdictional issues such as standing . . . and if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.").

Accordingly, the Court finds Plaintiffs have not demonstrated sufficiently that they would suffer a hardship if required to go forward, or that a stay would simplify the issues here. The second and third Landis factors therefore weigh against granting a stay.

MINUTES FORM 11                                    Initials of Deputy Clerk ___md___
CIVIL -- GEN                     Page 7

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

### 3.      Conclusion

As all three <u>Landis</u> factors weigh against granting a stay here, the Court DENIES Plaintiffs' Motion to Stay.

## B.      Motion to Dismiss

Article III of the Constitution gives federal courts jurisdiction over "cases and controversies."  U.S. Const. Art. III, § 2, cl. 2.  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  <u>Warth</u>, 422 U.S. at 498.  Standing, therefore, is a threshold issue in every federal case.  <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 524 U.S. 1, 11 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action.");  <u>Warth</u>, 422 U.S. at 517-18;  <u>McMichael v. County of Napa</u>, 709 F.2d 1268, 1269 (9th Cir. 1983) ("Before the judicial process may be invoked, a plaintiff must 'show that the facts alleged present the court with a 'case or controversy' in the constitutional sense and that [he] is a proper plaintiff to raise the issues sought to be litigated.'" (citing <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 616 (1973))).

To satisfy the "case or controversy" requirement, a plaintiff "must demonstrate that he has suffered an 'injury in fact'" that a favorable judgment will redress. <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990); <u>Newdow</u>, 542 U.S. at 12, citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992).  In other words, a plaintiff must satisfy "the irreducible constitutional minimum of standing" by demonstrating: (1) he has suffered an "'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there is a causal connection between the injury and the conduct complained of -- that is, the injury is "fairly traceable" to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it is "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable judicial decision.  <u>Lujan</u>, 504 U.S. at 560-61 (footnote, citations, and quotation marks omitted).  "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."  <u>Whitmore</u>, 495 U.S. at 155-56.

MINUTES FORM 11                                      Initials of Deputy Clerk ___md___
CIVIL -- GEN                          Page 8

The party invoking federal jurisdiction bears the burden of establishing the elements of standing.  Lujan, 504 U.S. at 561 (citing FW/PBS, Inc., 493 U.S. at 231; Warth, 422 U.S. at 508.  As the three elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages in litigation."  Lujan, 504 U.S. at 561 (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883-89 (1990); Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 114-15 & n.31 (1979); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 45 & n.25 (1917); Warth, 422 U.S. at 527 & n.6)).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." Id. (citing Nat'l Wildlife Fed'n, 497 U.S. at 889); see also Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011).  An action brought by a plaintiff who lacks standing is not a "case or controversy" under Article III, resulting in the court's lack of subject matter jurisdiction to entertain the action.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180-81 (2000)).

If a plaintiff cannot demonstrate standing, the action is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit.  Cetacean Community, 386 F.3d at 1174.  In that event, the suit should be dismissed under Rule 12(b)(1).  Id. (citations omitted).

Moving Defendants argue first that Plaintiffs lack standing because Moving Defendants were not the private mortgage insurers for any of Plaintiffs' mortgage loans, and, hence, Plaintiffs' injuries are not the result of Moving Defendants' actions.  (See FAC ¶¶ 19-21 (specifying which Private Mortgage Insurer each Plaintiff used).)  Plaintiffs do not dispute that they obtained private mortgage insurance from insurers other than Moving Defendants.  Plaintiffs contend, however, that their injuries are still the result of Moving Defendants' actions because Moving Defendants participated in a "scheme" along with the other insurance providers, the Captive Reinsurer, and JPMorgan that caused Plaintiffs to pay higher premiums for mortgage insurance.  Hence, according to Plaintiffs, their injuries are "fairly traceable" to Moving Defendants' actions.  Lujan, 504 U.S. at 560-61.

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

Moving Defendants also argue, however, that Plaintiffs have not alleged a "scheme" sufficiently because Plaintiffs are asserting a "hub-and-spoke conspiracy" wherein each insurer is a "spoke" in the conspiracy, but Plaintiffs failed to allege a connection between the spokes (i.e., the "rim" in such a conspiracy).  In support, Moving Defendants rely on Dickson v. Microsoft Corp., 309 F.3d 193, 204-05 (4th Cir. 2002).  There, the court in the context of a motion to dismiss noted that the plaintiffs asserted a "rimless wheel" or "hub-and-spoke" conspiracy amongst the defendants.  Id. at 203.  A "hub-and-spoke" conspiracy "is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction."  Id. (citing Kotteakos v. United States, 328 U.S. 750, 755 (1946)).  Reasoning that such theories of liability are neither "correct [n]or permissible," the court affirmed the district court's order dismissing the plaintiffs' complaint.  Id.

Plaintiffs assert, however, that they alleged a "rim" sufficiently by describing the scheme amongst the Private Mortgage Insurers, including Moving Defendants.  Specifically, Plaintiffs allege the Private Mortgage Insurers conspired amongst themselves and JPMorgan to establish the Captive Reinsurer Defendant and, in exchange for steering home buyers to the Private Mortgage Insurers, JPMorgan demanded the Private Mortgage Insurers agree to reinsurance transactions with those insurers.  (FAC ¶ 65.)  Under Plaintiffs' theory, each Private Mortgage Insurer agreed to participate in the scheme because JPMorgan guaranteed customers to each insurer in exchange for a percentage return disguised as a reinsurance premium.  If, however, any of the Private Mortgage Insurers declined to participate, the remaining Defendants could not maintain the scheme.  Hence, Plaintiffs contend, each of the Private Mortgage Insurers, including Moving Defendants, were aware of the actions of the others, and were engaged in a single, overarching scheme; i.e., a "rimmed wheel" conspiracy.  See In re Nat'l Ass'n of Music Merchs., Musical Instruments and Equip. Antitrust Litig., MDL No. 2121, 2011 WL 3702453, at * 5 (S.D. Cal. Aug. 22, 2011) (A "rimmed wheel" conspiracy, by contrast, involves either an agreement or understanding that other 'spokes' would cooperate in the conspiracy."  (citing Toys "R" Us, Inc. v. F.T.C., 221 F.3d 928, 931-36 (7th Cir.

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

2000))).  Assuming the truth of Plaintiffs' allegations, as the Court must,[3] Plaintiffs
have therefore alleged a scheme sufficiently.  Accord Bell Atl. Corp. v. Twombly, 550
U.S. 544, 557 (2007) (citing DM Research, Inc. v. College of Am. Pathologists, 170
F.3d 53, 56 (1st Cir. 1999) with approval, which held that courts may find general
allegations such as "conspiracy" or "agreement" sufficient under Federal Rule of
Civil Procedure 8(a) when pled in conjunction with a more specific allegation, such
as a basis for inferring a tacit agreement).

        "At the pleading stage, general factual allegations of injury resulting from the
defendant's conduct may suffice . . . ."  Lujan, 504 U.S. at 561 (citing Nat'l Wildlife
Fed'n, 497 U.S. at 889).  Here, Plaintiffs allege that by participating in this scheme,
Moving Defendants caused Plaintiffs' mortgage insurance premiums to be increased
by: (1) including the kickbacks to JPMorgan's Captive Reinsurer as part of the
mortgage insurance premium charged; and (2) reducing competition in the mortgage
insurance market.  (FAC ¶¶ 15, 95, 124.)  The Court finds Plaintiffs have set forth
general factual allegations indicating they were injured as a result of Moving
Defendants' participation in the scheme.  Hence, Plaintiffs have alleged Moving
Defendants caused an injury in fact.[4]

————————————————

    [3] See Warth, 422 U.S. at 501 (requiring trial courts resolving motions to
dismiss for lack of standing to "accept as true all material allegations of the
complaint and . . . construe the complaint in favor of the complaining party.").

    [4] Insofar as Moving Defendants rely on the "filed rate doctrine" to assert
Plaintiffs cannot challenge the private mortgage insurance premiums, that argument
has been addressed and rejected by several courts.  See Kay v. Wells Fargo & Co.,
247 F.R.D. 572, 576 (N.D. Cal. 2007) (finding that the filed rate doctrine did not bar
plaintiffs' RESPA claim where, as here, the plaintiff alleged "she paid an excess
amount of money due to a violation of RESPA."); see also Alston v. Countrywide Fin.
Corp.,585 F.3d 753, 763-64 (3d Cir. 2009) (citing Kay with approval and holding that
"[i]t is absolutely clear that the filed rate doctrine simply does not apply" where the
plaintiff pled an improper kickback scheme under RESPA); Munoz v. PHH Corp.,
659 F. Supp. 2d 1094, 1099-1100 (E.D. Cal. 2009) (collecting cases and citing Kay
                                                                      (continued...)

MINUTES FORM 11                              Initials of Deputy Clerk ___md___
CIVIL -- GEN                    Page 11

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

Plaintiffs therefore have demonstrated they suffered an "injury in fact," and that there is a causal connection between the injury and Moving Defendants' conduct. To demonstrate they have standing, however, they also must demonstrate it is "likely" that their injury will be redressed by a favorable judicial decision.  Lujan, 504 U.S. at 560-61.  Here, Plaintiffs request disgorgement of all reinsurance premiums, and a judicial declaration adjudging Defendants' conduct unlawful.  Were the Court to award such relief, Moving Defendants' conduct would be unlawful, and, hence, they could no longer participate in the alleged "scheme."  Under Plaintiffs' theory of liability, if Moving Defendants could no longer participate in the alleged scheme, the scheme would dissolve, and Plaintiffs could procure private mortgage insurance that did not include the alleged kickbacks.  Thus, under Plaintiffs' theory, it is "likely" that their injury would be redressed by a favorable judicial decision.  Lujan, 504 U.S. at 560-61.  Accordingly, Plaintiffs have satisfied the third requirement to demonstrate Article III standing.  Id.

As Plaintiffs have satisfied each of the requirements for Article III standing, the Court DENIES Moving Defendants' Motion.[5]

## IV.  CONCLUSION

────────────────────

[4](...continued)
with approval).

[5]  Insofar as Moving Defendants assert Plaintiffs lack statutory standing as opposed to Article III standing, that argument is not jurisdictional and is raised properly in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), not a motion under Rule 12(b)(1).  See Jewel v. Nat'l Sec. Agency, 673 F.3d 902, 907 (9th Cir. 2011) ("Statutory 'standing, unlike constitutional standing, is not jurisdictional.'" (quoting Noel v. Hall, 568 F.3d 743, 748 (9th Cir. 2009)); Catholic League for Religious & Civil Rights v. City & Cnty. of S.F., 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) (distinguishing standing analysis, "which prevents a claim from being adjudicated for lack of jurisdiction," from merits analysis, "which determines whether a claim is one for which relief can be granted if factually true").

EDCV 11-1950VAP(SPx)
WAYNE SAMP, et al. v. JPMORGAN CHASE BANK, N.A., et al.
MINUTE ORDER of May 7, 2012

     For the foregoing reasons, the Court DENIES Plaintiffs' Motion to Stay, and DENIES Moving Defendants' Motion to Dismiss.

     Moving Defendants also filed a Motion to Stay, (Doc. No. 93), requesting a stay in the event the Court denied their Motion to Dismiss. (Id. at 10.)  Plaintiffs do not oppose the motion on this ground, and the Court finds the request appropriate, as the Supreme Court's <u>Edwards</u> decision will likely simplify remaining questions of law relevant to this case. <u>CMAX</u>, 300 F.2d at 268.  The Court therefore GRANTS Moving Defendant's Motion to Stay and STAYS this action pending the Supreme Court's <u>Edwards</u> decision.

     **IT IS SO ORDERED.**