# EXHIBIT A


Consumer Financial
Protection Bureau

**FOR IMMEDIATE RELEASE:**
April 4, 2013

**CONTACT:**
Office of Communications
Tel: (202) 435-7170

**CONSUMER FINANCIAL PROTECTION BUREAU TAKES ACTION AGAINST MORTGAGE INSURERS TO END KICKBACKS TO LENDERS**
*Four Companies to Pay $15.4 Million in Penalties*

**WASHINGTON, D.C.** — The Consumer Financial Protection Bureau (CFPB) today announced four enforcement actions to end what the Bureau believes to be improper kickbacks paid by mortgage insurers to mortgage lenders in exchange for business. The CFPB filed complaints and proposed consent orders against four national mortgage insurance companies in order to stop these practices, which have been prevalent for more than 10 years. The proposed orders require the four mortgage insurers to pay more than $15 million in penalties to the CFPB.

"Illegal kickbacks distort markets and can inflate the financial burden of homeownership for consumers," said CFPB Director Richard Cordray. "We believe these mortgage insurance companies funneled millions of dollars to mortgage lenders for well over a decade. The orders announced today put an end to these types of arrangements and require these insurers to pay more than $15 million in penalties for violating the law."

The CFPB alleges that four mortgage insurance companies violated federal consumer financial law by engaging in widespread kickback arrangements with lenders across the country. The CFPB believes the mortgage insurers named in today's enforcement actions provided kickbacks to mortgage lenders by purchasing captive reinsurance that was essentially worthless but was designed to make a profit for the lenders.

The four companies named in today's actions are Genworth Mortgage Insurance Corporation, United Guaranty Corporation, Radian Guaranty Inc., and Mortgage Guaranty Insurance Corporation. In exchange for kickbacks, these mortgage insurers received lucrative business referrals from lenders. These types of kickbacks were a common practice in the years leading up to the financial crisis. These four companies were key players during that time.

<u>Enforcement Action</u>
In accordance with the proposed settlement, the four mortgage insurance companies have agreed to change their practices and pay fines to the CFPB. Specifically, they have agreed to the following:

- **End the practice:** If entered by the court, the proposed orders will prevent these four mortgage insurers from engaging in this practice going

> forward. The mortgage insurers are prohibited from entering into any new captive mortgage reinsurance arrangements with affiliates of mortgage lenders, and from obtaining captive reinsurance on any new mortgages, for a period of ten years. As pre-existing reinsurance arrangements come to a close, the mortgage insurers will forfeit any right to the funds not directly related to collecting on reinsurance claims. The mortgage insurers will also be prohibited from paying illegal kickbacks or otherwise violating the Real Estate Settlement Procedures Act. Any violation of these prohibitions could result in additional fines.
>
> - **Payment of more than $15 million in penalties:** The four mortgage insurers will pay the CFPB a total of $15.4 million in penalties. The amount of the penalties reflects a number of factors, including each mortgage insurers' finances, the pervasiveness of its conduct, its relative culpability, and its cooperation with the Bureau.
>
> - **Compliance monitoring and reporting:** These companies will be subject to monitoring by the CFPB and required to make reports to the CFPB in order to ensure their compliance with the provisions of the orders.

Mortgage insurance is typically required on loans when homeowners borrow more than 80 percent of the value of their home. It protects the lender against the risk of default. Generally, the lender, not the borrower, selects the mortgage insurer. The borrower pays the insurance premium every month in addition to the mortgage payment.

While mortgage insurance can help borrowers get a loan when they cannot make a 20 percent down payment, it also adds to the cost of monthly payments for borrowers who have little equity in their homes. As such, mortgage insurance can be especially harmful when its cost is inflated by illegal kickbacks. Increasing the burden on borrowers who already have little equity increases the risk that they will default on their mortgages. Widespread defaults, in turn, can be damaging for communities and the housing market.

The kickbacks at issue in today's actions were paid to the lenders through "captive reinsurance arrangements." "Reinsurance" is simply insurance for insurance companies. Many insurance companies purchase reinsurance in order to cover their own risk of unexpectedly high losses. When a mortgage lender sets up a subsidiary company to provide reinsurance to the mortgage insurers, it becomes a "captive" arrangement. It is "captive" because the lender both originates the loan and, through its own subsidiary, provides the reinsurance.

The Office of Inspector General at the Department of Housing and Urban Development (HUD) initiated this investigation of reinsurance practices, and in July 2011, HUD's authority over the investigation transferred to the CFPB. Since then, HUD has given the CFPB valuable assistance in this matter.

The proposed Consent Orders have been signed by the CFPB and the named companies. The full text of each of the proposed Consent Orders is available at:

- Genworth Mortgage Insurance Corporation:
  http://files.consumerfinance.gov/f/201304_cfpb_consent-order-1.pdf

- Mortgage Guaranty Insurance Corporation:
  http://files.consumerfinance.gov/f/201304_cfpb_consent-order-2.pdf
- Radian Guaranty Inc.:
  http://files.consumerfinance.gov/f/201304_cfpb_consent-order-3.pdf
- United Guaranty Corporation:
  http://files.consumerfinance.gov/f/201304_cfpb_consent-order-4.pdf

The proposed Consent Orders have been filed with the United States District Court for the Southern District of Florida court and will have the full force of law only when signed by the presiding judge. The Bureau files a complaint when it has reason to believe that the law has been or is being violated, and it appears to the Bureau that an enforcement action is in the public interest. The complaint is not a finding or ruling that the defendants have actually violated the law.

###

*The Consumer Financial Protection Bureau is a 21st century agency that helps consumer finance markets work by making rules more effective, by consistently and fairly enforcing those rules, and by empowering consumers to take more control over their economic lives. For more information, visit www.consumerfinance.gov.*

# EXHIBIT B



APR 4 2013

# Press call on enforcement action against mortgage insurers to end kickbacks to lenders

BY RICHARD CORDRAY

**Prepared Remarks of Richard Cordray**
**Director of the Consumer Financial Protection Bureau**

**Press Call on Enforcement Action Against Mortgage Insurers to End Kickbacks to Lenders**

**Washington, DC**
**April 4, 2013**

Thank you for joining us today. The Consumer Bureau was born out of the worst financial crisis since the Great Depression. The financial reform law that created us also directed us to root out unfair, deceptive, or abusive acts or practices in connection with consumer financial products or services. More generally, we are charged with the duty of ensuring fair, transparent, and competitive markets. We recognize that can only be done by strong and vigilant enforcement.

Today, we are taking enforcement actions against four mortgage insurance companies to end a long cycle of kickbacks between them and mortgage lenders. As background, when a home buyer cannot make a 20 percent down payment, the lender may require mortgage insurance. The borrower pays the insurance premium every month in addition to the mortgage payment.

Generally the lender, not the borrower, selects the mortgage insurer because the insurance protects the lender against the risk of default on the loan. The mortgage insurance business can be lucrative, and our investigation indicates that lenders sought to leverage their control over the business to capture some of those revenues for themselves.

Based on our investigation, we believe that the exertion of this pressure led these mortgage insurance companies to funnel many millions of dollars to lenders for well over a decade. The payments were dressed up as supposedly relating to a "reinsurance" product provided by new subsidiaries created by the lenders. "Reinsurance" is simply further insurance provided to insurance companies themselves as a means of hedging the risks they have taken on. Here, however, we believe that the payments made as supposed "reinsurance" premiums did not correspond to a proportionate transfer of insurance risk between the parties. In essence, then, the lenders were extracting financial kickbacks from the mortgage insurers in exchange for referring business to them.

While mortgage insurance can help borrowers get a loan, the financial burden it imposes is clearly magnified if the cost is inflated by illegal kickbacks. That harms not only consumers, but entire communities, the housing market, and the economy as a whole. These are precisely the kinds of concerns that led Congress to pass the Real Estate Settlement Procedures Act (known as "RESPA") almost forty years ago. It generally prohibits kickbacks in connection with real estate transactions. The proposed orders put an end to these types of arrangements and require these insurers to pay more than $15 million in penalties for violating the law.

Today's actions are an important step in our quest to improve markets for consumers by getting rid of harmful practices that impede their pathway to opportunity. Homeownership is difficult and expensive enough for most people without extra costs imposed by financial kickbacks that are kept hidden from them. In the meantime, we are continuing to look into the lender side of these captive reinsurance arrangements.

###

*The Consumer Financial Protection Bureau is a 21st century agency that helps consumer finance markets work by making rules more effective, by consistently and fairly enforcing those rules, and by empowering consumers to take more control over their economic lives. For more information, visit www.consumerfinance.gov.*

# EXHIBIT C-1